**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BEYOND PESTICIDES *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 17-941 (TJK) |
| MONSANTO CO. *et al.*, | |
| *Defendants*. | |

## MEMORANDUM OPINION

On March 31, 2018, the Court issued an Order, ECF No. 12, denying Defendant

Monsanto Company's Motion to Dismiss, ECF No. 9, and stating that a Memorandum Opinion

would follow within thirty days. This Opinion sets forth the reasons for the Court's Order.

**I.     Background**

Defendant Monsanto Company ("Monsanto") manufactures and sells a product known as

Roundup "Garden Weeds" Weed & Grass Killer ("Roundup"). ECF No. 7 ("Am. Compl.") ¶ 1.

Roundup includes an active ingredient called glyphosate, which, according to Monsanto's

advertising and labeling, "targets an enzyme found in plants but not in people or pets." *Id.* ¶ 7.

Pursuant to its obligations under the Federal Insecticide, Fungicide, and Rodenticide Act

("FIFRA"), 7 U.S.C. § 136 *et seq.*, Monsanto submitted its Roundup labels, including the text

quoted above, to the EPA for approval. ECF No. 9-1 ("Def.'s Mot.") at 4-5. In 2008, the EPA

approved the labels for commercial use, concluding that they were "acceptable." *See id.* at 5;

ECF No. 9-3 ("Ex. 2"); ECF No. 9-4 ("Ex. 3"); ECF No. 9-5 ("Ex. 4"). Since then, Monsanto

has repeated this claim on its Roundup labels. Def.'s Mot. at 1; Am. Compl. ¶ 66. In 2014, the

EPA reviewed these labels again and determined that the language was, again, "acceptable."

ECF No. 9-6.

On April 7, 2017, Plaintiffs filed a complaint in the Superior Court of the District of Columbia against Monsanto and unnamed Doe defendants alleging violations of the District of Columbia Consumer Protection Procedures Act ("DCCPPA"), D.C. Code § 28-3901 *et seq.*, for unlawful trade practices. *See* ECF No. 1-4. After Monsanto removed the case to this Court based on diversity of citizenship, ECF No. 1, Plaintiffs filed an amended complaint, Am. Compl.

In their amended complaint, Plaintiffs allege that the claim that Roundup targets an enzyme "found in plants but not in people or pets" is false and misleading because that enzyme "*is* found in people and pets." Am. Compl. ¶¶ 7, 9. Specifically, they assert that glyphosate, the active ingredient in Roundup, targets an enzyme that exists in "gut bacteria" found in humans and other mammals. *Id.* ¶¶ 9, 47-51. Plaintiffs allege that Monsanto is aware that its labels and advertising are false, *id.* ¶¶ 68-72, but continues to repeat this claim because "consumers are more likely to buy—and will pay more for—weed killer formulations that do not affect people and animals," *id.* ¶ 55.

On July 10, 2017, Monsanto filed a Motion to Dismiss the Amended Complaint on the grounds that Plaintiffs' claims are time-barred, that Plaintiffs fail to state a claim because the statement at issue is not false or misleading, and that Plaintiffs' claims are preempted by FIFRA. Def.'s Mot.; *see also* ECF No. 10 ("Pls.' Opp."); ECF No. 11 ("Def.'s Reply"). On March 31, 2018, the Court denied Monsanto's Motion to Dismiss and stated that a Memorandum Opinion would follow within thirty days. *See* ECF No. 12.

## II.    Legal Standard

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'" *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). "In

evaluating a Rule 12(b)(6) motion, the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). "But the Court need not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Id.* "To survive a motion to dismiss, a complaint must have 'facial plausibility,' meaning it must 'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III. Analysis

Monsanto moves to dismiss on the grounds that Plaintiffs' claims are time-barred, fail to state a claim because the statement at issue on Roundup labels is not false or misleading, and are preempted. Def.'s Mot. The Court addresses each in turn.

### A. Statute of Limitations

The statute of limitations "may . . . 'be raised by pre-answer motion under Rule 12(b),' but only if 'the facts that give rise to the defense are clear from the face of the complaint.'" *Stewart v. Int'l Union, Sec., Police & Fire Prof'ls of Am.*, 271 F. Supp. 3d 276, 280 (D.D.C. 2017) (quoting *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998)). "Dismissal is improper, however, 'as long as a plaintiff's potential rejoinder to the affirmative defense [is not] foreclosed by the allegations in the complaint.'" *Id.* (alteration in original) (quoting *de Csepel v. Republic of Hungary*, 714 F.3d 591, 608 (D.C. Cir. 2013)). "Because statute of limitations issues often depend on contested questions of fact, . . . the court should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the

complaint." *Adams v. District of Columbia*, 740 F. Supp. 2d 173, 180 (D.D.C. 2010), *aff'd*, 618

F. App'x 1 (D.C. Cir. 2015).

"[T]he [DCCPPA] is subject to a three-year statute of limitations." *Reese v. Loew's*

*Madison Hotel Corp.*, 65 F. Supp. 3d 235, 248 (D.D.C. 2014) (citing D.C. Code §§ 28-3905, 12-

301(8)); *see also Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 323 (D.C. 2008) ("No

statute of limitations is specified for actions brought under the [DCCPPA], and so the residual

three-year statute of limitations [D.C. Code § 12-301(8)] applies."). "Under District of

Columbia law, a [DCCPPA] 'claim accrues for purposes of the statute of limitations at the time

the injury actually occurs.'" *Reese*, 65 F. Supp. 3d at 248 (quoting *Murray*, 953 A.2d at 324).

"Because [Monsanto] has raised its statute of limitations defense in a motion to dismiss, the

Court must take the allegations of the complaint as true." *Stewart*, 271 F. Supp. 3d at 281 (citing

*Iqbal*, 556 U.S. at 679).

Monsanto argues that Plaintiffs' claims are time-barred because Plaintiffs knew that

glyphosate targeted an enzyme that existed in human and animal gut bacteria by 2013—if not

earlier. Def.'s Mot. at 6; *see also* Def.'s Reply at 3-6. In response, Plaintiffs argue that (1)

Monsanto continues to violate the DCCPPA by falsely marketing Roundup, so "at a minimum" it

is "subject to suit for any sales of Roundup made in the last three years"; (2) Monsanto's

deliberate concealment of the relevant facts regarding Roundup tolls the statute of limitations

under the "discovery rule"; and (3) the continuous-conduct doctrine also tolls the statute of

limitations. Pls.' Opp. at 5-8.

The Court has little trouble concluding that Plaintiffs' claims are not time-barred in their

entirety. Plaintiffs' theory is that "that there have been a series of repeated violations of an

identical nature." *Figueroa v. D.C. Metro. Police Dep't*, 633 F.3d 1129, f1135 (D.C. Cir. 2011)

(internal quotation marks omitted); *see also Axcan Scandipharm Inc. v. Ethex Corp.*, 585 F.

Supp. 2d 1067, 1078 (D. Minn. 2007) ("[T]he challenged conduct was not the result of one

incessant violation, but rather was a series of repeated violations of an identical nature, namely,

the Defendants' repeated (false) advertising their drugs . . . ." (internal quotation marks

omitted)). "[B]ecause each violation gives rise to a new cause of action, each [violation] begins

a new statute of limitations period as to that particular event." *Figueroa*, 633 F.3d at 1135

(quoting *Knight v. Columbus*, 19 F.3d 579, 582 (11th Cir. 1994)). As a result, "[a]s long as a

defendant keeps committing wrongful acts resulting in injury, plaintiff will be able to bring some

cause of action within the statutory period dating from such wrongs." *Perkins v. Nash*, 697 F.

Supp. 527, 532 (D.D.C. 1988); *cf. East West, LLC v. Rahman*, 896 F. Supp. 2d 488, 505 (E.D.

Va. 2012) ("When a defendant commits multiple wrongful acts, a separate statute of limitations

attaches to each wrongful act."); *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*,

859 F. Supp. 1521, 1530 n.3 (S.D.N.Y. 1994) ("[W]e find each of defendants' alleged violations

of the Lanham Act to be . . . 'a distinct harm giving rise to an independent claim for relief.'"

(quoting *Stone v. Williams*, 970 F.2d 1043, 1049 (2d Cir. 1992))). Thus, Plaintiffs' claims

cannot be dismissed as time-barred because, at the very least, claims regarding sales of Roundup

in the last three years are timely.

The cases Monsanto cites do not hold otherwise. *See* Def.'s Mot. at 1, 5; Def.'s Reply at

4. Some cases it cites involve claims brought under the DCCPPA. The plaintiffs in those cases

were challenging allegedly fraudulent sales or misrepresentations that occurred at a specific point

in time outside the statute of limitations. *See Bradford v. George Wash. Univ.*, 249 F. Supp. 3d

325, 330, 335-36 (D.D.C. 2017) (claims regarding marketing for education program held in

2012-2013 held untimely); *Silvious v. Snapple Beverage Corp.*, 793 F. Supp. 2d 414, 418

(D.D.C. 2011) (plaintiff's claim was time-barred because he filed the lawsuit "six years after his last alleged purchase"); *Murray*, 953 A.2d at 324 (DCCPPA claim accrued when notice of foreclosure was issued).  Similarly, *Mizell v. SunTrust Bank*, 26 F. Supp. 3d 80, 85 (D.D.C. 2014), *see* Def.'s Reply at 4, addressed the question of when a claim for a breach of a single contract accrued.  Here, by contrast, Plaintiffs allege that Monsanto *continues* to violate the law by selling misbranded Roundup, so at least some of their claims are timely.

In addition, disputed questions of fact about how the discovery rule applies in this case preclude granting a motion to dismiss.  "Under the 'discovery rule,' the running of a limitations period may in some circumstances be tolled until the plaintiff knows or reasonably should have known of the injury." *Wright v. Howard Univ.*, 60 A.3d 749, 752 n.1 (D.C. 2013) (citing *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1203 (D.C. 1984)).  "In all cases to which the discovery rule applies[,] the inquiry is highly fact-bound and requires an evaluation of all of the plaintiff's circumstances." *Ray v. Queen*, 747 A.2d 1137, 1142 (D.C. 2000) (alteration in original) (quoting *Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996)).

Here, for instance, Plaintiffs assert that they did not have notice of their claims in 2013 because their work focused on the carcinogenic qualities of glyphosate, not on the fact that it targeted an enzyme that may exist in humans or animals.  Pls.' Opp. at 6-7.  Such unresolved factual questions preclude dismissal.  *See, e.g.*, *Sheppard v. Monsanto Co.*, No. 16-cv-43, 2016 WL 3629074, at *6 (D. Haw. June 29, 2016) (concluding in case involving Roundup misbranding that the court "would deny the [motion to dismiss] because disputes of material fact remain as to [the plaintiff's] diligence and discovery of the cause of action"); *Johnson v. Long Beach Mortg. Loan Tr. 2001-4*, 451 F. Supp. 2d 16, 41 (D.D.C. 2006) ("[U]nder the discovery rule, the dates of accrual of Plaintiff's D.C. . . . claims . . . cannot be determined as a matter of

law on this motion to dismiss.").  Moreover, even apart from when Plaintiffs actually knew of

their claims, when they "should have known" about them is also an unresolved factual question

that precludes dismissal.  *See Lee v. Wolfson*, 265 F. Supp. 2d 14, 19 (D.D.C. 2003) (denying

motion to dismiss because "the date on which plaintiff knew or should have known of [the

defendant's] wrongdoing" was a question of fact for the jury to decide).[1]  Monsanto is, of course,

entitled to renew its argument that some portion of Plaintiffs' claims are time-barred at the

summary judgment stage.

> **B.      Failure to Plausibly Allege that Roundup's Labeling is False or Misleading**

"[U]nder District of Columbia law a claim 'of an unfair trade practice is properly

considered in terms of how the practice would be viewed and understood by a reasonable

consumer.'"  *Whiting v. AARP*, 637 F.3d 355, 364 (D.C. Cir. 2011) (quoting *Pearson v. Soo

Chung*, 961 A.2d 1067, 1075 (D.C. 2008)).  A "district court could appropriately grant a motion

to dismiss on a deceptive practices claim if no reasonable person would be . . . deceived."  *Id.*

Plaintiffs advance a straightforward argument that Roundup's label is false or misleading:

the product purports to "target[] an enzyme found in plants but not in people or pets,"  Am.

Compl. ¶ 7, but according to Plaintiffs, that enzyme "*is* found in people and pets" because it

exists in their gut bacteria, *id.* ¶ 2.  In response, Monsanto argues that Plaintiffs' claim is just

"wordplay" because no reasonable consumer would believe that "in people and pets"

encompasses their gut bacteria.  Def.'s Mot. at 8.

The Court concludes that Plaintiffs have adequately pleaded a claim that the statement at

issue was false or misleading.  As another court presiding over a similar "Roundup" case has

explained, "Defendants cannot dispute that the label's statement that the enzyme at issue is

---

[1] In light of these open questions about the timeliness of Plaintiffs' claims, the Court need not,
and does not, address at this stage whether the continuous-conduct doctrine applies.

'found in plants, but not in people' is, at least on one reading, literally false." *Carias v. Monsanto Co.*, No. 15-cv-3677, 2016 WL 6803780, at *9 (E.D.N.Y. Sept. 30, 2016) (denying motion to dismiss for failure to state a claim). That is, Roundup supposedly targets an enzyme that is not found in people or animals, but that enzyme is, in fact, found in their gut bacteria. *See Blitz v. Monsanto Co.*, No. 17-cv-473, 2018 WL 1785499, at *1 (W.D. Wis. Apr. 13, 2018) (denying motion to dismiss because "[t]aking plaintiff's allegations as true, . . . [the enzyme targeted by Roundup] is found in bacteria that inhabit the human and other mammalian guts").[2] And as in *Carias*, Monsanto fails to cite "to a single case granting a motion to dismiss where the statement at issue was literally false or the statement at issue was even remotely similar to one at bar." 2016 WL 6803780, at *9.

In its reply brief, Monsanto cites the Fourth Circuit's decision *In re GNC Corp.*, 789 F.3d 505 (4th Cir. 2015), for the first time to argue that "[w]hen a complaint asserts that a label is 'false' based on a scientific claim, the complaint must plead that 'all reasonable experts in the field agree that the representations are false.'" Def.'s Reply at 7 (emphasis omitted) (quoting *GNC*, 789 F.3d at 516). As an initial matter, "it is a well-settled prudential doctrine that courts generally will not entertain new arguments first raised in a reply brief." *Benton v. Laborers' Joint Training Fund*, 121 F. Supp. 3d 41, 51 (D.D.C. 2015) (quoting *Lewis v. District of Columbia*, 791 F. Supp. 2d 136, 140 n.4 (D.D.C. 2011)) (collecting cases). More importantly, *GNC* is also readily distinguishable. The statement at issue in *GNC* was that supplements containing glucosamine and chondroitin promoted joint health, and the plaintiffs claimed that

---

[2] The *Blitz* opinion was issued after this Court issued the Order denying Monsanto's Motion to Dismiss. The Court did not rely upon *Blitz* when it concluded that Monsanto's Motion to Dismiss should be denied, but it is cited in this Opinion because it provides additional support for the Court's conclusion.

"most"—but not all—"duly qualified scientific experts . . . agree that glucosamine and chondroitin are ineffective."  789 F.3d at 509, 515.  Here, by contrast, Plaintiffs are not making a scientific claim about the health benefits of a particular chemical, which might lend itself to a battle of the experts, but rather a straightforward factual assertion that the enzyme targeted by glyphosate exists "in people or pets."  *See Blitz*, 2018 WL 1785499, at *6 ("*In re GNC* is at least arguably distinguishable" because "plaintiff's allegation that [the enzyme targeted by Roundup] is found in gut bacteria present in human bodies is seemingly more of a binary proposition: either the enzyme is found in gut bacteria present in humans or it is not.").  As already noted, and unlike in *GNC*, granting Plaintiffs "all inferences that can be derived from the facts alleged," *Hettinga*, 677 F.3d at 476, Roundup's branding is "at least on one reading, literally false." *Carias*, 2016 WL 6803780, at *9; *see also Blitz*, 2018 WL 1785499, at *6 ("[F]or the purposes of evaluating defendant's motion to dismiss, the court must accept as true plaintiff's allegation that [the enzyme Roundup targets] is present in gut bacteria found in human bodies, making the challenged statement on the Roundup label 'literally false.'").  Therefore, any rule about the pleading standard for scientific claims in the labeling context adopted by the Fourth Circuit in *GNC* is simply inapposite here.

Finally, even if the statement on Roundup's label is not "literally false," Plaintiffs have also alleged that it is also misleading.  Am. Compl. ¶ 1.  This provides another reason to reject Monsanto's motion to dismiss.  *See Blitz*, 2018 WL 1785499, at *8 ("Upon reading the label, a reasonable consumer *could* think that glyphosate does not target *any* enzyme found *in* people— including in the human gut.  Under that reading, the Roundup label would be misleading . . . ."

(citation omitted)).[3]  For all of the above reasons, the Court cannot conclude that "no reasonable person would be . . . deceived" by the Roundup label, such that dismissal of Plaintiffs' claims would be appropriate.  *Whiting*, 637 F.3d at 364.

### C.    Preemption

Monsanto also contends that Plaintiffs' claims are preempted by FIFRA and therefore must be dismissed.  Def.'s Mot. at 9-11.  The Court disagrees.

"The Supremacy Clause provides that the laws and treaties of the United States 'shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'"  *Mut. Pharm. Co. v. Bartlett*, 133 S. Ct. 2466, 2472-73 (2013) (alteration in original) (quoting U.S. Const., art. VI, cl. 2).  "Under this principle, Congress has the power to preempt state law."  *Arizona v. United States*, 567 U.S. 387, 399 (2012).  And "[t]here is no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision."  *Id.*  But "because the States are independent sovereigns in our federal system, we have long presumed that Congress does not

---

[3] Monsanto argues in a footnote in its reply brief that Plaintiffs should not be able to plead that a statement "is both literally false and misleading."  Def.'s Reply at 8 n.8 (citing *Korolshteyn v. Costco Wholesale Corp.*, No. 3:15-cv-709, 2017 WL 3622226, at *5 (S.D. Cal. Aug. 23, 2017)).  "As the D.C. Circuit has consistently held, the Court should not address arguments raised for the first time in a party's reply."  *Jones v. Mukasey*, 565 F. Supp. 2d 68, 81 (D.D.C. 2008).  But even if the Court were to consider the argument, it does not hold water.  The DCCPPA proscribes, among other things, to "represent that goods . . . have . . . characteristics, ingredients, uses, benefits, or quantities that they do not have"—that is, to make false representations— *or* to "misrepresent as to a material fact which has a tendency to mislead."  D.C. Code § 28-3904.  Thus, the Court sees no reason that Plaintiffs cannot argue, at least at this stage, that the statement on Roundup labels is both false and misleading.  *Cf. Blitz*, 2018 WL 1785499, at *8 ("The court disagrees with defendant's assertion that plaintiff can pursue only a literal falsity claim because he has not claimed the Roundup label was true but misleading, because Wisconsin law does not require plaintiffs make such distinctions . . . , especially at the notice pleading stage." (citation omitted)).

cavalierly pre-empt state-law causes of action." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

FIFRA is "a comprehensive scheme to regulate the use, sale and labeling, of pesticides— partly through EPA registration of the substances." *N.Y. State Pesticide Coal., Inc. v. Jorling*, 874 F.2d 115, 117 (2d Cir. 1989). Manufacturers seeking to sell pesticides are required to apply for registration with the EPA and must file certain information, including a copy of the label for the pesticide. 7 U.S.C. § 136a(a), (c)(1). The EPA then evaluates the product to ensure that the product meets certain specifications, including that the proposed label does not cause the pesticide to be "misbranded." *Id.* §§ 136a(c)(5)(B), 136j(a)(1)(E). Under FIFRA, a product is "misbranded" if its label "bears any statement . . . which is false or misleading in any particular." *Id.* § 136(q)(1)(A).

 "Congress included an express preemption provision when it enacted FIFRA." *Johnson v. Monsanto Chem. Co.*, 129 F. Supp. 2d 189, 192 (N.D.N.Y. 2001). FIFRA expressly preempts any state-law claim that imposes "any requirements for labeling or packaging in addition to or different from those required in [FIFRA]." 7 U.S.C. § 136v(b). In *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005), the Supreme Court provided guidance about what claims are preempted under FIFRA. The Court interpreted the term "requirements" in FIFRA's preemption provision to "reach[] beyond positive enactments, such as statutes and regulations, to embrace common-law duties." *Id.* at 443. But it does not extend to "any event, such as a jury verdict, that might 'induce' a pesticide manufacturer to change its label." *Id.* The Court explained that a state-law requirement is not preempted as long as it is "fully consistent" with the federal requirement, *id.* at 452, even if it is not "phrased in the *identical* language as its corresponding FIFRA requirement," *id*. at 454. And while a state cannot impose a "broader obligation than

11

FIFRA's requirement that labels not contain 'false or misleading statements,'" a broader state

law is preempted only "to the extent of that difference." *Id.* at 453.

Against this backdrop, the Court concludes that Plaintiffs' claims are not preempted

because the DCCPPA, as it relates to pesticide labels, does not impose a broader or different

obligation than FIFRA. FIFRA defines "misbranding" as "any statement . . . which is false or

misleading in any particular." 7 U.S.C. § 136(q)(1)(A). This definition is "quite expansive."

*Mendoza v. Monsanto Co.*, No. 16-cv-406, 2016 WL 3648966, at *2 (E.D. Cal. July 8, 2016). In

the amended complaint, Plaintiffs allege that Monsanto's label was "misleading" because it

violated six provisions of the DCCPPA. Am. Compl. ¶ 91. Those provisions make it an

unlawful trade practice, among other things, to "represent that goods . . . have . . . characteristics,

ingredients, uses, benefits, or quantities that they do not have," "misrepresent as to a material

fact which has a tendency to mislead," or "fail to state a material fact if such failure tends to

mislead." *Id.* (quoting D.C. Code § 28-3904). So FIFRA prohibits "any statement" that is false

or misleading in "any particular," and the DCCPPA similarly prohibits statements that

misrepresent goods or mislead consumers. Under both statutes, false or misleading statements

on a pesticide label are proscribed. Although the DCCPPA contains more detail than the

misbranding provision in FIFRA, it is "fully consistent" with FIFRA as Plaintiffs seek to apply it

to Roundup's label. *Bates*, 544 U.S. at 452. In fact, the scope of the DCCPPA may actually be

"slightly narrower" than FIFRA, *Hardeman v. Monsanto Co.*, 216 F. Supp. 3d 1037, 1038 (N.D.

Cal. 2016), because its subsections have qualifiers (such as materiality) that are not present in

FIFRA.

This conclusion is consistent with the weight of authority from other courts that have

analyzed whether FIFRA preempts various state-law claims for false advertising and deceptive

trade practices.  "[D]istrict courts presiding over similar cases involving Roundup have reached a

consensus . . . that FIFRA does *not* preempt claims for damages under state law."  *Blitz*, 2018

WL 1785499, at *3 (collecting cases).  These courts concluded that claims for damages under

various state laws are not preempted because they do not impose a different requirement than

FIFRA.  *See, e.g.*, *Blitz*, 2018 WL 1785499, at *4 (finding Wisconsin's Deceptive Trade

Practices Act "does not appear to require anything different or additional" than FIFRA); *Carias*,

2016 WL 6803780, at *4, *7 (finding "plaintiffs' claims for damages under [New York] state

law are not preempted" because they "do nothing more than allow plaintiffs to pursue a damages

remedy if Roundup is misbranded under FIFRA"); *Martin*, 2017 WL 659014, at *4 ("Defendant

fails to demonstrate . . . that [California's broad false advertising, unfair competition, and

consumer remedies statutes] impose any labeling or packaging requirements that are 'in addition

to or different from those required under [FIFRA].'  Indeed, to the extent Plaintiff's claims attack

the Roundup . . . product labeling, they appear to be consistent with FIFRA's misbranding

provision.").  In these cases, courts have construed state laws as simply providing a damages

remedy for violations of federal law.  *See Sheppard*, 2016 WL 3629074, at *8 ("Federal law does

not prevent a state from providing a damages remedy for violations of federal law.").

The same is true here.  The District of Columbia can, and does, effectively provide

remedies for violations of FIFRA that are not preempted.  *See Bates*, 544 U.S. at 451 ("Private

remedies that enforce federal misbranding requirements would seem to aid, rather than hinder,

the functioning of FIFRA."); *Sheppard*, 2016 WL 3629074, at *8 (claims not preempted where

"[p]laintiffs essentially allege that Roundup is 'misbranded' in violation of FIFRA and thus in

violation of Hawaii law"); *Hardeman*, 216 F. Supp. 3d at 1038 ("[T]he EPA's authority to

enforce FIFRA does not prohibit private litigants from also enforcing that statute.").

Monsanto raises a few arguments why Plaintiffs' claims are nonetheless preempted. It

argues that the DCCPPA "imposes broader obligations" than FIFRA. Def.'s Mot. at 11. But it

does not explain how it does so. It argues that the DCCPPA applies "whether or not any

consumer is in fact misled, deceived or damaged thereby," Def.'s Mot. at 11 (quoting D.C. Code

§ 28-3904). The same is true, however, of FIFRA: it covers "*any* statement" that is "false or

misleading in *any* particular," 7 U.S.C. § 136(q)(1)(A) (emphases added), regardless of whether

the consumer was misled or damaged.

Monsanto also appears to suggest that the DCCPPA creates requirements "in addition to

or different" from FIFRA because it proscribes some conduct that FIFRA does not. *See* Def.'s

Mot. at 10, 12. It cites, for instance, *DJ Coleman, Inc. v. Nufarm Ams., Inc.*, 693 F. Supp. 2d

1055 (D.N.D. 2010). Def.'s Mot. at 11. In that case, the court concluded that a claim under the

North Dakota's Consumer Fraud Act—which prohibits "any deceptive act or practice, fraud,

false pretense, false promise, or misrepresentation"—was preempted by FIFRA, holding that it

"clearly imposes a broader obligation than FIFRA's requirement that labels not contain 'false or

misleading' statements." *DJ Coleman*, 693 F. Supp. 2d at 1081.

In the Court's view, the *DJ Coleman* court's apparent reasoning misses the mark. There

is no doubt that state consumer fraud statutes will generally cover significantly more conduct

than just the labeling of pesticides or other chemicals. But the question is not whether the statute

reaches conduct *beyond* such labeling. It is whether the statute "impose[s] a labeling

requirement that diverges from those set out in FIFRA and its implementing regulations." *Bates*,

544 U.S. at 452. Here, the DCCPPA and FIFRA are "fully consistent," *id.*, because the

DCCPPA does not impose any additional requirements that are inconsistent with FIFRA.[4]

Monsanto advances one final argument that Plaintiffs' claims are preempted: that their

request for declaratory relief is functionally a requirement that the company change its label. *See*

Def.'s Mot. at 12-13. But *Bates* instructs otherwise. Although the term "requirements" in

FIFRA's preemption provision "reaches beyond positive enactments, such as statutes and

regulations, to embrace common-law duties," the Court explained that "an occurrence that

merely motivates an optional decision does not qualify as a requirement" triggering preemption

under FIFRA. *Bates*, 544 U.S. at 443. As such, it rejected the argument that "any event, such as

a jury verdict, that might 'induce' a pesticide manufacturer to change its label should be viewed

as a requirement." *Id.*

---

[4] In similar "Roundup" cases, Monsanto has also argued that the fact the EPA approved the labels at issue preempts state law. In this case, Monsanto does not appear to explicitly advance this argument. But it does note that the EPA approved the labels and cites *Smith v. Hartz Mountain Corp.*, No. 3:12-cv-662, 2012 WL 5451726, at *2-4 (N.D. Ohio Nov. 7, 2012), and *Wilgus v. Hartz Mountain Corp.*, No. 3:12-cv-86, 2013 WL 653707, at *5 (N.D. Ind. Feb. 19, 2013), two cases where the court relied on compliance with EPA regulations to find preemption. *See* Def.'s Mot. at 9-11. To the extent Monsanto advances that argument here, this Court agrees with the majority of courts that have rejected it. *See, e.g.*, *Blitz*, 2018 WL 1785499, at *4-5 & n.6 (distinguishing *Smith* and *Wilgus* and concluding that "to the extent that defendant is arguing that the EPA's . . . approval of the Roundup label carr[ies] any preemptive force, defendant is simply mistaken"); *Martin v. Monsanto Co.*, No. 16-cv-2168, 2017 WL 659014, at *4 (C.D. Cal. Feb. 16, 2017); *Carias*, 2016 WL 6803780, at *5 (rejecting *Smith* and *Wilgus* and finding their analysis "cursory" and "conclusory"); *Hardeman*, 216 F. Supp. 3d at 1038 ("[T]here's no indication that the EPA's approval of Roundup's label had the force of law."); *Hernandez v. Monsanto Co.*, No. 16-cv-1988, 2016 WL 6822311, at *6 (C.D. Cal. July 12, 2016) ("The plain language of [7 U.S.C. § 136(f)(2)] further supports the conclusion that the EPA's registration decision is not preemptive."); *see also Schoenhofer v. McClaskey*, 861 F.3d 1170, 1176 & n.4 (10th Cir. 2017) (noting that, even if EPA registration carries the force of law, "[i]t is not clear that EPA-approved labels can preempt state laws on their own; if anything, *Bates* suggests the opposite" (citing *Bates*, 544 U.S. at 452)).

Courts in "Roundup" cases have concluded that claims for injunctive relief are preempted because they would *require* Monsanto to change Roundup's label. *See, e.g.*, *Hardeman*, 216 F. Supp. 3d at 1039 ("Dictating the contents of Roundup's label would usurp the EPA's exclusive authority . . . to approve all pesticide labeling."); *Carias*, 2016 WL 6803780, at *7 ("Although plaintiffs' claims for damages under state law are not preempted, plaintiffs' claim for injunctive relief is."); *Mirzaie v. Monsanto Co.*, No. 2:15-cv-04361, 2016 WL 146421, at *2 (C.D. Cal. Jan. 12, 2016) (claim for injunctive relief preempted because it would "require Defendant to alter its label"). But these cases do not help Monsanto here, because Plaintiffs' amended complaint seeks only a *declaration* that Monsanto's label violates the DCCPPA, not an injunction. Am. Compl. at 19-20; Pls.' Opp. at 10-11.

Acknowledging this distinction, Monsanto counters that a declaration that Roundup violates the DCCPPA is nonetheless "akin to requesting an injunction that Monsanto change its federally approved labels." Def.'s Mot. at 12 n.3; *see also* Reply at 11. Monsanto cites two Supreme Court cases suggesting that effects of declaratory and injunctive relief are often similar. Def.'s Mot. at 12 n.3 (citing *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) (noting that, "ordinarily," "the practical effect of [injunctive and declaratory] relief will be virtually identical"); *Samuels v. Mackell*, 401 U.S. 66, 73 (1971)). But whatever the similarities of these two forms of relief, "[i]njunctions and declaratory judgments are different remedies. An injunction is a coercive order by a court directing a party to do or refrain from doing something, and applies to future actions. A declaratory judgment states the existing legal rights in a controversy, but does not, in itself, coerce any party or enjoin any future action." *Ulstein Mar., Ltd. v. United States*, 833 F.2d 1052, 1055 (1st Cir. 1987). The declaratory relief sought by the

Plaintiffs here would not *require* Monsanto to change its label, even though it might well "induce" it to do so, *Bates*, 544 U.S. at 443. As a result, it is not preempted by FIFRA.

**IV.** **Conclusion**

For all of the above reasons, the Court has **DENIED** Monsanto's Motion to Dismiss, ECF No. 9.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: April 30, 2018